FILED

2014 MAY 27  P 1: 42

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

L-3 COMMUNICATIONS CORPORATION )
)
and )
)
L-3 APPLIED TECHNOLOGIES, INC., )
)
    Plaintiffs, )
)
v. )
)
SERCO INC., )
)
    Defendant. )
)

Case No.: 1:14CV619
( GBL / JFA )

## DEFENDANT SERCO INC.'S NOTICE OF REMOVAL

Defendant Serco Inc. ("Serco"), by its counsel, hereby removes to this Court the above-captioned action from the Circuit Court for the County of Fairfax, Virginia, pursuant to the provisions of 28 U.S.C. §§ 1441, 1442(a)(1), and 1446.[1] As grounds for removal, Serco states as follows:

### SUMMARY

1.     A defendant may properly remove an action from state court pursuant to 28 U.S.C. § 1441(a) if a federal district court would have original jurisdiction over the action. This Court has original jurisdiction over this case pursuant to 28 U.S.C. § 1331 because it is evident from L-3's Complaint that resolution of its claims will require the resolution of substantial questions of federal law.

---

[1] Serco also will be filing a motion to dismiss on or before June 3, 2014. That motion will explain that each of L-3's claims are time barred and/or fail to state a claim.

2. Moreover, a defendant may properly remove a case from state court pursuant to 28 U.S.C. § 1442(a)(1) if it is "a (1) 'person' (2) 'acting under' the United States, its agencies, or its officers (3) that has been sued 'for or relating to any act under color of such office,' and (4) has a colorable federal defense to the plaintiff's claim." *Ruppel v. CBS Corp.*, 701 F.3d 1176, 1180-81 (7th Cir. 2012) (quoting 28 U.S.C. § 1442(a)). As explained below, Serco satisfies the requirements of Section 1442(a)(1) because it is a corporation acting in its official capacity under its Prime Contract with the U.S. Air Force, and L-3's suit derives solely from Serco's performance of its official duties under that contract. Further, Serco has colorable federal defenses to L-3's claims: first, Serco has derivative official immunity for actions it took as part of its official duties under its federal government contract; and second, the U.S. Air Force directed and/or approved *all* of Serco's subcontractor selections for HEMP-related work under the Prime Contract.

3. Any claims not removable under 28 U.S.C. §§ 1441 and 1442(a)(1) should be removed under this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367 since they arise under "the same nucleus of operative facts."

## FACTUAL BACKGROUND

4. Serco is the prime contractor under a contract with the U.S. Air Force Space Command Communications Support Squadron, Contract No. FA2517-04-D0001, entitled "Command, Control, Communications, Computers, Intelligence, Information Technology, Surveillance and Reconnaissance (C4I2TSR) Engineering and Technical Support" (the "Prime Contract"). Compl. ¶ 18. Serco's Prime Contract with the U.S. Air Force expressly states that it is governed by federal law, including the Federal Acquisition Regulation (the "FAR"), the Defense Federal Acquisition Regulation Supplement (the "DFARS"), and numerous other

federal statutes and regulations. *See, e.g.*, Serco's Prime Contract, § I Contract Clauses, attached as Exhibit 1 (listing FAR and DFARS clauses).

5. Serco's Prime Contract is for managing the testing and upgrading of designated U.S. Military Air Force sites around the world in order to protect them from a high-altitude electromagnetic pulse ("HEMP") event, such as a nuclear explosion.[2] *See* Statement of Work ("SOW"), §§ 1.2, 1.3, 1.4.4, 1.8, 1.10, 1.11, and 1.12.5, attached as Exhibit 2. Serco does not perform the actual HEMP testing and upgrade work itself; rather, it issues task orders to various subcontractors to perform this work. Serco cannot issue a task order to a subcontractor without the U.S. Air Force's approval. *See* Serco's Prime Contract, § H-1. Task Orders, attached as Exhibit 1 ("The contractor [Serco] shall prepare a proposal describing their plan to accomplish the task and proposed cost. *The proposal shall be submitted within the negotiated time frame after receipt of the draft task order. The CO and CQAE [i.e., the Government] will review the proposal for adequacy* and discuss the task requirement, scope, schedule, and estimated cost with the contractor as necessary. *The CO controls all discussions. After CO/CQAE concurrence with the proposal, the CO will issue the task order. . . . The cost estimated for each task order will be established using the rates proposed by the contractor and accepted by the Government.*") (emphasis added). L-3 competes with other subcontractors for this work, including Jaxon Engineering & Maintenance, Inc. ("Jaxon"), a company formed by former L-3 employees. The core of L-3's Complaint concerns Serco's award of task orders to Jaxon instead of L-3.

---

[2] A HEMP event is an event creating an intense electromagnetic field that can instantly overload electrical circuits. When produced in the atmosphere by the power and radiation of a nuclear explosion, it is referred to as high-altitude electromagnetic pulse (HEMP) or nuclear electromagnetic pulse (NEMP) event, which can damage electronic equipment over a wide area. Clay Wilson, *High Altitude Electromagnetic Pulse (HEMP) and High Power Microwave (HPM) Devises: Threat Assessments*, Cong. Res. Serv. Rep. for Cong., Aug. 20, 2004, *available at* http://www.history.navy.mil/library/online/hemp_hpm.htm (last visited May 22, 2014).

6. Because Serco's Prime Contract involves the protection of sensitive military installations and, thus, implicates national security, Compl. ¶ 10, some of the Contract work is classified, *see, e.g.*, SOW § 4.7.1(f) (noting Contract performance involves classified information and documentation, which must be protected in accordance with the DoD Industrial Security Manual). Moreover, the Contract's Security Classification Specification requires a "Top Secret" facility clearance and contains a "Top Secret" safeguarding requirement. *See* DD Form 254, attached as Exhibit 3, which is incorporated into Serco's Prime Contract by reference. Importantly, *any information* — classified or unclassified — pertaining to the Prime Contract may not be released for public dissemination absent the prior approval of the U.S. Air Force Space Command Headquarters. *Id.*

7. Serco has a subcontract with L-3, Subcontract No. SI-2004-SC203333 (the "Subcontract"), which applies to any task orders that Serco may issue to L-3 under Serco's Prime Contract with the U.S. Air Force. *See* L-3's Subcontract with Serco, § B.1, attached as Exhibit 4. It is an indefinite delivery/indefinite quantity (or "IDIQ") Subcontract, meaning that the Subcontract itself does not assign or guarantee to L-3 any particular piece or amount of work. *Id.* § B.3. Indeed, the Subcontract states explicitly that L-3 is not guaranteed to be awarded any task orders under the Subcontract. *Id.* § B.1 ("It is understood that Prime Contractor has no obligation to issue and there is no guaranty to Subcontractor that it will receive any work under the terms of this Subcontract, or that a TO [task order] will be issued in response to a Task Order proposal submitted by the Subcontractor."); *id.* § B.3 ("There is no guarantee that Subcontractor will receive any work under this Subcontract."). Like Serco's Prime Contract with the U.S. Air Force, L-3's Subcontract with Serco expressly states that it is governed by federal law. *Id.* § H.10 ("Irrespective of the place of performance, this Subcontract shall be construed and

interpreted according to the federal common law of government contracts as enunciated and applied by federal judicial bodies, boards of contract appeals, and quasi-judicial agencies of the federal government and as set forth in the applicable provisions of federal law and regulation."). Only where the federal common law of government contracts does not resolve a particular issue will the law of Virginia apply. *Id.*

8. A DD Form 254 was issued to L-3 whenever a task order was awarded to it; that DD Form 254 is virtually identical to the DD Form 254 incorporated into Serco's Prime Contract by reference. *See, e.g.*, L-3 DD Form 254, attached as Exhibit 5. The DD Form 254 requires that L-3 maintain a "Top Secret" facility clearance and contains a "Top Secret" safeguarding requirement. Moreover, the DD Form 254 prohibits L-3 from publicly disclosing *any information* — classified or unclassified — pertaining to L-3's Subcontract absent the prior approval of the U.S. Air Force Space Command Headquarters, which must be obtained through the prime contractor, Serco. *Id.*

9. In the fall of 2010, L-3 confronted Serco with allegations virtually identical to those contained in its Complaint here and threatened to name Serco as a defendant in a lawsuit L-3 subsequently filed in November 2010 against Jaxon and various Jaxon personnel in Colorado federal district court (the "2010 Colorado Complaint"). *See* Correspondence between T. Daley and J. Daniel, attached as Exhibit 6. Like here, L-3's 2010 Colorado Complaint alleges that various Jaxon employees stole property from L-3, conspired with Serco personnel, and improperly competed for (and won) task orders under Serco's Prime Contract. The allegations contained in L-3's Complaint here are substantially similar to three of the claims asserted in L-

3's 2010 Colorado Complaint, which remains pending; we understand that fact discovery in the Colorado case has closed. The 2010 Colorado Complaint is attached as Exhibit 7.[3]

10. Serco was never named as a defendant in L-3's Colorado federal court case against Jaxon, despite being named as a "co-conspirator" throughout the 2010 Colorado Complaint. Serco, however, has devoted substantial time and effort to respond to L-3's assorted and extensive document requests and deposition subpoenas during the course of the Colorado litigation.

11. Serco and the U.S. Air Force also have been substantially involved in the Colorado litigation in light of the security requirements described above in paragraphs 6 and 8. The U.S. Air Force, Serco, and the parties in the Colorado litigation worked for several weeks to agree upon and obtain approval of an appropriate protective order so that the parties could comply with their DD Form 254 obligations. Moreover, the U.S. Air Force itself produced thousands of pages of documents in response to L-3's discovery requests. Because L-3 is attempting to litigate the same issues in this case, we expect the same level of U.S. Air Force involvement, if not more, should this case proceed to discovery.

12. In its Complaint here, L-3 alleges that Serco tortiously interfered with L-3's confidentiality contracts with its former employees (Count I) and its Subcontract or "business expectancy" under that Subcontract with Serco (Count II), and conspired with Jaxon to do the same (Counts III and IV). As purported support and evidence for its claims, L-3 asserts that Serco violated numerous federal laws. For example, L-3 alleges that Serco violated "federal regulations" in awarding 2009 task orders to Jaxon, Compl. ¶ 37; that Serco knew Jaxon's submission of its proposals for the 2009 task orders violated "federal regulations and statutes,

---

[3] An Amended Complaint was filed in the Colorado action on February 11, 2011.

(including the Procurement Integrity Act, 41 U.S.C. § 2102)," Compl. ¶ 38; that in 2010, Serco violated "applicable federal regulations" and its "obligations to the government under [its Prime Contract]," Compl. ¶ 45; and that Serco's teaming with Jaxon and awarding it task orders in 2009 and 2010 "violated various FARs by eliminating fair and open competition and skewing the bidding process, including by providing Jaxon with inside information on the bidding process," Compl. ¶ 59.

## PROCEDURAL HISTORY

13.     This removed action was commenced in the Circuit Court for the County of Fairfax, Virginia, on May 1, 2014, with the filing of the Complaint by L-3 styled *L-3 Communications Corporation, et al., v. Serco, Inc.*, Case No. CL-2014-05946. The clerk of court issued the Summons on May 2, 2014.

14.     Attached hereto as Exhibits 8 and 9, and pursuant to 28 U.S.C. § 1446(b), are copies of the Complaint and the Summons served on Serco. No orders have been entered by the state court.

15.     Serco was served on May 6, 2014, as reflected in the docket of the Circuit Court for the County of Fairfax, Virginia, which is attached as Exhibit 10. This Notice of Removal is therefore timely filed within thirty (30) days after service pursuant to 28 U.S.C. § 1446(b).

16.     Venue of this removal is proper under 28 U.S.C. § 1441(a) because this Court is the United States District Court for the district and division corresponding to the place where the state court action is pending. Having said that, Serco will be filing a motion to transfer this case to Colorado pursuant to 28 U.S.C. § 1404, as Colorado is where: i) the Serco office at the heart of this dispute is located; ii) the Serco employees and former employees (including Don Eich and

Michael Stella) are located; iii) the documents relevant to this case are located; and iv) the alleged events occurred.

## BASES FOR REMOVAL

### I. FEDERAL QUESTION JURISDICTION

17. Removal is proper under 28 U.S.C. § 1441 and *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808 (1988), because L-3's Complaint presents several substantial federal questions; thus, this Court has original jurisdiction of this action under 28 U.S.C. § 1331.

18. In determining whether a plaintiff's claim arises under federal law, the Fourth Circuit applies "the well-pleaded complaint rule," in which the court *normally* looks " 'no further than the plaintiff's [properly pleaded] complaint in determining whether a lawsuit raises issues of federal law.' " *Pinney, M.D. v. Nokia, Inc.*, 402 F.3d 430, 442 (4th Cir. 2005) (quoting *Custer v. Sweeney*, 89 F.3d 1156, 1165 (4th Circuit 1996)). In examining the complaint, the court looks at " 'whether federal or state law creates the cause of action.' " *Id.* (quoting *Mulcahey v. Columbia Organic Chems. Co.*, 29 F.3d 148,151 (4th Cir. 1994)). "The general rule . . . is that a plaintiff is the 'master of the claim' and he may 'avoid federal jurisdiction by exclusive reliance on state law.' " *Id.* (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). However, there is a well-established exception for those cases where " 'the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law, in that federal law is a necessary element of one of the well-pleaded . . . claims.' " *Id.* (quoting *Christianson*, 486 U.S. at 808). This exception is known as the substantial federal question doctrine, and it applies here.

19. Under the substantial federal question doctrine, a court must consider: i) whether the plaintiff's right to relief necessarily depends on a question of federal law; and ii) whether the

question of federal law is substantial. *Pinney*, 402 F.3d at 442 (citing *Dixon v. Coburg Dairy, Inc.*, 369 F.3d 811, 816 (4th Cir. 2004)). "A plaintiff's right to relief necessarily depends on a question of federal law when 'it appears that some ... disputed question of federal law is a necessary element of one of the well-pleaded state claims.' " *Id.* (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 13 (1983)). The question of federal law is "substantial" when "the state-law claims ... 'really and substantially involve[ ] a dispute or controversy respecting the validity, construction or effect of federal law,' " *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 313 (2005) (quoting *Shulthis v. McDougal*, 225 U.S. 561, 569 (1912)), "indicating a serious federal interest in claiming the advantages thought to be inherent in a federal forum." 545 U.S. at 313.

20. At its core, L-3's Complaint (or at least a substantial portion thereof) challenges Serco's decisions regarding the award of task orders under Serco's Prime Contract with the federal government — decisions made with the active participation by and approval of the U.S. Air Force. *See* Serco's Prime Contract, § H-1. Task Orders, attached as Exhibit 1 (quoted *supra*, ¶ 5). Not surprisingly, since this case is fundamentally about a disappointed bidder's challenge to a federal contractor's performance of a federal contract expressly governed by federal law, L-3's Complaint is replete with allegations that Serco violated federal law.

21. Based on the allegations contained on the face of L-3's Complaint as set forth above in paragraph 12, the validity of at least some of L-3's claims will necessarily depend on the interpretation of federal statutes and regulations and two government contracts, both of which are governed by federal law. In particular, Count II requires the Court to determine whether the Subcontract between Serco and L-3 is valid and enforceable (as opposed to illusory) under the federal common law of government contracts, and, if so, whether Serco's supposed violations of

federal regulations breached the Subcontract. Only if the answers to both of those questions are yes under federal law could L-3 advance to assert and attempt to prove a claim for tortious interference. *See R-G Denver, Ltd. v. First City Holdings of Colo., Inc.*, 789 F.2d 1469, 1474 (10th Cir. 1986) (citing *Comtrol, Inc. v. Mountain States Tel. & Tel. Co.*, 513 P.2d 1082 (Colo. Ct. App. 1973)) (in order to state a claim for tortious interference with contract, a plaintiff must prove: (1) an existing valid contract; (2) knowledge by the defendant of the contract; (3) intent by the defendant to breach the contract; (4) action by the defendant that causes the breach; and (5) damage to the plaintiff).[4] Count III is derivative of the allegations contained in L-3's Complaint and relies, in part, on Count II. *See* Compl. ¶ 70 ("Serco's combining with Jaxon and others, and its assisting Jaxon in setting up a turn-key HEMP-testing operation that directly competes with L-3 tortiously interfered with L-3's valid contractual expectancies that L-3 would obtain the HEMP-related Task Orders in 2009 and 2010."). Count III will require the same resolutions of federal law because it depends on L-3's ability to satisfy the elements of its tortious interference claim.

22. Moreover, the federal questions that must be resolved in this case are substantial. The federal government and its contracting parties require certainty and uniformity in the interpretation of their government contracts and the federal laws applicable thereto. *See Grable & Sons Metal Prods., Inc.*, 545 U.S. at 314-15 (case "warrant[ed] federal jurisdiction" because case involved interpretation of a federal statute in which the "Government ha[d] a strong interest" in its uniform interpretation); *U.S. Marine, Inc. v. United States*, 722 F.3d 1360, 1369 & 1371 (Fed. Cir. 2013) (noting " 'the long established policy that government contracts are to be

---

[4] As will be explained in Serco's motion to dismiss, Colorado law on tortious interference would apply through operation of the *lex loci delicti* doctrine mandated by Virginia's choice of law rules.

given a uniform interpretation and application under federal law,' " and the compelling need to maintain a uniform interpretation of government contracting regulations such as the FAR and DFARS). Thus, the issues raised in L-3's Complaint "sensibly belong[ ] in federal court." *Grable & Sons Metal Prods., Inc.*, 545 U.S. at 315.

## II. FEDERAL OFFICER REMOVAL STATUTE

23. The Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1), provides an independent basis for removal. Under that Statute, a civil action brought in state court may be removed to federal court if the defendant can show it is "a (1) 'person' (2) 'acting under' the United States, its agencies, or its officers (3) that has been sued 'for or relating to any act under color of such office,' and (4) has a colorable federal defense to the plaintiff's claim." *Ruppel*, 701 F.3d at 1180-81 (citing 28 U.S.C. § 1442(a)); *see also Hendy v. Bello*, No. 13–1060, 2014 WL 464231, at *1 (4th Cir. Feb. 6, 2014) (stating that "[s]ection 1442(a)(1) allows federal officers or those 'acting under' any 'agency' or 'officer' of the United States to remove to federal court suits brought against them in state court, when they were acting 'in an official or individual capacity, for or relating to any act under color of such office' "). The "colorable federal defense" requirement creates Article III jurisdiction and "represents an exception to the well-pleaded complaint rule, which would ordinarily defeat jurisdiction when the federal question arises outside of the plaintiff's complaint." *Ruppel*, 701 F.3d at 1180 (citing *Mesa v. California*, 489 U.S. 121, 136 (1989)). The Federal Officer Removal Statute is broad and may be invoked by private parties without "special burden." *Id.* at 1180 (citing *Willingham v. Morgan*, 395 U.S. 402, 406 (1969)). Indeed, the Federal Officer Removal Statute has been successfully used by federal government contractors to remove civil actions filed in state court. *See, e.g., Ruppel*, 701 F.3d 1176.

24. Serco meets all four elements of the Federal Officer Removal Statute because:

    a. A corporation is a "person" under the statute. *Ruppel*, 701 F.3d at 1181.

    b. Serco was "acting under" a federal officer of the U.S. Government when it allegedly tortiously interfered with the contracts (or "business expectancy") alleged in this case. *See id.* (Defendant "CBS satisfies the second element because [plaintiff's] injury occurred while it [CBS] 'acted under' a federal officer" in performance of its duties under its federal contract with the U.S. Government). "Acting under" is liberally construed under the Federal Officer Removal Statute, *id.* (citing *Watson v. Phillip Morris Cos.*, 551 U.S. 142, 147 (2007)), and merely involves "an effort to assist, or to help carry out" a federal official's duties or tasks, including "working hand-in-hand with the federal government to achieve a task that furthers an end of the federal government." *Id.* In *Ruppel*, the court found that "acting under" includes situations "where the federal government uses a private corporation to achieve an end it would have otherwise used its own agents to complete." *Id.* This is identical to Serco's role under its Prime Contract with the U.S. Air Force, in which it assists the federal government in protecting sensitive military installations from a HEMP event.

    c. Serco was acting "under color of [federal authority]" in connection with the actions alleged in L-3's Complaint because those actions are all related to Serco's performance of its Prime Contract with the U.S. Air Force. In order for a contractor to meet the "under color of [federal authority]"

requirement, there must be " 'a causal connection between the charged conduct and asserted official authority.' " *Id.* (quoting *Jefferson Cnty., Ala. v. Acker*, 527 U.S. 423, 431 (1999)). Such a causal connection exists if the federal contractor's relationship with the plaintiff "derive[s] solely from [its] official duties for the [U.S. Government]." *Id.* (quoting *Willingham*, 395 U.S. at 409); *see also Willingham*, 395 U.S. at 409 ("In this case, once petitioners had shown that their only contact with the respondent occurred inside the penitentiary, while they were performing their duties, we believe that they had demonstrated the required 'causal connection.' "). As the allegations in L-3's Complaint make clear, Serco's relationship with L-3 was predicated on Serco's HEMP-related work for the U.S. Air Force. It was this relationship that gave rise to L-3's Complaint. Accordingly, "the gravamen of [L-3's] complaint occurred while [Serco] acted under color of federal authority." *Ruppel*, 701 F.3d at 1181.

d. Serco has a "colorable federal defense" to L-3's claims because it has derivative official immunity for actions it took as part of its official duties under its federal government contract, and because the U.S. Air Force had final approval over which subcontractors were selected to perform the HEMP-related task order work. "Colorable" means "plausible"; the defense need not be "clearly sustainable" to meet the requirement for federal removal. *Id.* at 1182. "In construing the colorable federal defense requirement, the Supreme Court has rejected a 'narrow, grudging

interpretation' of the statute, recognizing that 'one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court.'" *Reg'l Med. Transp., Inc. v. Highmark, Inc.*, 541 F. Supp. 2d 718, 725 (E.D. Pa. 2008) (quoting *Acker*, 527 U.S. at 431). Moreover, where the defendant's "colorable defense" depends on an interpretation of federal law, this is enough to satisfy the requirement. *Id.* Serco will argue (assuming the Court here or in Colorado reaches the merits of L-3's Complaint) that Serco did not "tortiously interfere" with any of L-3's contracts or "business expectancy" by purportedly violating its Prime Contract with the U.S. Air Force, its Subcontract with L-3, or federal law or regulations as alleged in L-3's Complaint. A federal contractor also may argue that it has derivative official immunity from state tort liability where the plaintiff's claims arise from actions the defendant took within the scope of its official duties and where the actions were discretionary in nature. *Id.* at 733 & n.5 (recognizing the defendants' official immunity argument but not deciding the issue). As discussed above, the conduct of which L-3 complains all arose in the context of Serco's performance of its official duties under its Prime Contract with the U.S. Air Force, and Serco's actions in awarding such contracts were discretionary in nature (*i.e.*, the procedures for conducting competitions and awarding such task orders were not prescribed by Serco's Prime Contract). Accordingly, Serco has raised a

"colorable federal defense" for purposes of the Federal Officer Removal Statute.

25. Because Serco has satisfied the requirements of the Federal Officer Removal Statute, Section 1442(a)(1) provides an independent basis for federal removal.

## III. SUPPLEMENTAL JURISDICTION

26. Insofar as any of L-3's claims are not individually removable, this Court has supplemental jurisdiction over them because they are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). The Fourth Circuit has stated that "once a district court ha[s] valid jurisdiction over a federal claim, it [can], in its discretion, exercise supplemental jurisdiction over additional state claims if they ar[ise] out of 'a common nucleus of operative fact[s]' such that the plaintiff would ordinarily be expected to try the claims in one judicial proceeding." *White v. Cty. of Newberry, S.C.*, 985 F.2d 168, 171 (4th Cir. 1993) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966)); *see also Barnes v. West, Inc.*, 249 F. Supp. 2d 737, 740 (E.D. Va. 2003) (same). Here, L-3's claims clearly revolve around "a central fact pattern" — Serco's alleged conduct and purported conspiracy with Jaxon to divert HEMP-related business away from L-3 to Jaxon in supposed violation of federal law — and L-3 chose to allege these claims in a single Complaint. *White*, 985 F.2d at 172. Accordingly, this Court should exercise its discretion to invoke supplemental jurisdiction over any claims not individually removable.

## CONCLUSION

27. In accordance with 28 U.S.C. § 1446(d), promptly upon the filing of this Notice of Removal, a true and correct copy of this Notice of Removal also will be filed with the Circuit Court for the County of Fairfax, Virginia, and written notice will be sent to L-3's counsel.

28. If any questions arise as to the propriety of the removal of this action, Serco respectfully requests the opportunity to present a further brief and oral argument in support of its position that this case is removable.

29. By filing this Notice of Removal, Serco does not waive any defenses that may be available to it, and does not concede that the allegations in the Complaint state a valid claim under any applicable law.

WHEREFORE, Serco respectfully requests that this action be removed from the Circuit Court for the County of Fairfax, Virginia, to the United States District Court for the Eastern District of Virginia, Alexandria Division, pursuant to this Notice of Removal, and that this Court assume jurisdiction over this action.

Respectfully submitted,

SERCO INC.
By counsel

Date: May 27, 2014

BLANKINGSHIP & KEITH, P. C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
(703) 691-1235 (telephone)
(703) 691-3913 (facsimile)

By: _____
John A. C. Keith, VSB No. 14116
jkeith@bklawva.com
Laurie L. Proctor, VSB No. 75320
lproctor@bklawva.com

-and-

Kevin D. Evans, Esq.
Jonathan J. Frankel, Esq.
Deborah A. Raviv, Esq.
IJay Palansky, Esq.
Steese, Evans & Frankel, P.C.
Army Navy Club Building
1627 I Street, NW
Suite 850
Washington, D.C. 20006
(202) 293-6841 (telephone)
(202) 293-6842 (facsimile)
*Pro hac vice admission to be requested*

*Counsel for Defendant Serco Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of May 2014, a true copy of the foregoing was sent via facsimile and mailed, first class, postage prepaid to:

>Benjamin Chew, Esq.
>Nigel L. Wilkinson, Esq.
>Pillsbury Winthrop Shaw Pittman LLP
>2300 N Street, NW
>Washington, D.C. 20037-1122
>202-663-8041 (telephone)
>202-663-8007 (facsimile)
>Counsel for Plaintiffs L-3 Communications Corporation and
>L-3 Applied Technologies, Inc.

>Steven L. Levitt, Esq.
>Karen Lisa Solomon Weiss, Esq.
>Steven L. Levitt & Associates, P.C.
>129 Front Street
>Mineola, NY 11501
>516-248-9770 (telephone)
>516-741-9224 (facsimile)
>Of Counsel for Plaintiffs

/s/ John A.C. Keith
John A.C. Keith, Esq.
Virginia State Bar No. 11416
BLANKINGSHIP & KEITH, P.C.
4020 University Drive, Suite 300
Fairfax, Virginia 22030
Fairfax, VA 22030
Telephone: (703) 293-7226
Facsimile: (703) 691-3313
Email: jkeith@bklawva.com
Counsel for Defendant Serco Inc.